UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

Plaintiff/Respondent,

Civ. No. 08-CV-14900
Crim. No. 06-CR-20680

vs.

Hon. Gerald E. Rosen

MICHAEL J. SIMON,

Defendant/Petitioner.
_______________________________/

ORDER DENYING DEFENDANT'S 2255 MOTION
TO VACATE SENTENCE BUT CORRECTING THE JUDGMENT
OF CONVICTION PURSUANT TO FED. R. CRIM. P. 36

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on May 21, 2009

PRESENT: Honorable Gerald E. Rosen
Chief Judge, United States District Court

INTRODUCTION

Michael J. Simon, an accountant, was originally charged in a two-count indictment with bank fraud stemming from his embezzlement of funds from two corporate clients. To appropriate his clients' money, Simon used corporate checks provided by the clients for the purpose of paying business related-taxes owed by the clients to the State of Michigan. Instead of submitting the checks to the State of Michigan, however, Simon either altered the payee of previously-prepared corporate checks or fraudulently used a corporate signature stamp to make checks payable to himself. Defendant then unlawfully

deposited the checks into a business account he controlled and thereafter withdrew the funds and used them for his own purposes.

On September 19, 2007, Simon pled guilty to a one-count superseding bank fraud information pursuant to a Rule 11 Plea Agreement, and on July 30, 2008, was sentenced to 51 months imprisonment, to be followed by three years supervised release. Simon was also ordered to pay restitution in the amount of $1,458,029.36. No appeal was taken from the sentence.[1]

I.

Simon now asks the Court pursuant to 28 U.S.C. § 2255 to vacate, set aside or correct his sentence claiming as follows:

> Ground One -- Involuntary coerced plea. Defendant claims he was unlawfully induced into an involuntary coerced plea by an "electronic internal surveillance device or devices that were placed in his body which spoke to [him]" during his plea hearing and "shocked" him into pleading guilty.
>
> Ground Two -- Unconstitutional search, seizure. Defendant claims that the above-mentioned internal body surveillance devices were implemented unconstitutionally against his free will.
>
> Ground Three -- Defendant claims he was not given a 5K1.1 downward departure even though he claims to have met all of the lawful substantial cooperation requirements.
>
> Ground Four -- Unconstitutional failure of the prosecution to disclose during any and/or all court or legal proceedings the internal surveillance devices being placed in defendant's body.

---

[1] Defendant waived his right to appeal in his Rule 11 Agreement.

> Ground Five -- Denial of effective counsel. Defendant claims that his counsel was ineffective for allowing inadmissible evidence -- specifically, lie detector, polygraph results -- to be used in court proceedings.

> Ground Six -- Plea document errors. Defendant claims that a date and year of a single count was wrong in one of his plea documents, and in two other plea document locations, the dollar amounts stated are "fictitiously written, non-recognizable or comprehensible amounts."

INVOLUNTARY COERCED PLEA

Petitioner's claims alleging the secret implant of an electronic device [Grounds One, Two, and Four] are without any factual support whatsoever and are wholly nonsensical.

Defendant was questioned by the Court at length at his plea, in particular, with regard to his competency and as to the voluntariness of his plea, and nothing in the record supports or suggests that Defendant was subject to any undue influence by any person, or any foreign substance or internal body surveillance device. Defendant affirmatively stated that he was not taking any medication of any kind, had not had any alcohol within the preceding 24 hours, had not taken any drugs of any kind, and had not been diagnosed with an serious physical, mental, emotional, psychological illnesses. *See* 9/19/07 Plea hearing Tr., pp. 5-6. He informed the Court that he felt good and was not having any trouble understanding the Court or his lawyer. *Id*. p. 6. He further stated that nobody forced him or coerced him to plead guilty. *Id.* at p. 23. He further stated that he was pleading guilty freely and voluntarily. *Id.* "'A defendant's statements at a plea hearing should be regarded as conclusive [as to truth and accuracy] in the absence of a believable,

valid reason justifying a departure from the apparent truth of those statements.'" *United States v. Owens*, 215 Fed. Appx. 418 (6th Cir. 2007) (quoting *United States v. Cinnamon*, 112 Fed.Appx. 415, 419 (6th Cir. 2004) (alteration in original) (quoting *United States v. Estrada*, 849 F.2d 1304, 1306 (10th Cir.1988)).

The only mention of any "electronic devices" made by Defendant was at his sentencing on July 30, 2008. At the sentencing hearing, after the Court explained to Defendant his sentencing calculations (which turned out to be less favorable than Defendant had anticipated), Defendant made a plea for leniency alleging "trickery by the banks" and stated that he believed a "transponder" had been implemented "*in my office or in my home* in which there's still further surveillance being done on me insofar as wire taps in this surveillance." 7/30/08 Sentencing Hrg. Tr.

Mr. Simon's personal, subjective belief notwithstanding, there is no evidence that his home or office was wiretapped or bugged with any electronic surveillance devices. Furthermore, the evidence does not support any contention that Defendant was delusional or otherwise not competent at his plea or sentencing. Gary Rasmussen, Ph.D., a clinical psychologist, who examined Mr. Simon prior to sentencing at the behest of his attorney, found "no evidence of hallucinations, delusions or loose associations," and found him "competent [and] culpable." Dr. Rasumssen stated that, although Simon was experiencing emotional distress,

> [h]e does not demonstrate difficulty in recognizing the cause and effect links of his own behavior. He is capable of discerning right from wrong. He does not have a history of being delusional and/or suffering from

> psychotic episodes. He does not. . . demonstrate any symptomology related to paranoia such as ideas of reference, feelings of persecution, a grandiose self-concept, or suspiciousness.

Based upon the foregoing, the Court finds no merit in Defendant's claim of unconstitutional seizure or unlawful coercion or undue influence due to electronic devices implanted in his body. Accordingly, the Court also finds no basis for Defendant's claim that prosecution unlawfully failed to disclose the implantation of such electronic devices.

DENIAL OF EFFECTIVE COUNSEL

To establish the ineffective assistance of counsel, Petitioner must show that (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" and (2) counsel's deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 698 (1984). However, "[t]here is no reason for a court deciding an ineffective assistance claim. . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697. If "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice. . . that course should be followed." *Id.*

"[T]he two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel." *Hill v. Lockhart*, 474 U.S. 52, 58 (1985) (citing *Strickland v. Washington*, 466 U.S. at 687-88). To succeed on an ineffective assistance of counsel claim, a defendant must demonstrate that (1) counsel's representation fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's unprofessional errors, he would not have

pleaded guilty and would have insisted on going to trial. *Id*. at 59; *Hunter v. United States*, 160 F.3d 1109, 1115 (6th Cir.1998). *See also Raily v. Webb,* 540 F.3d 393, 415 (6th Cir.2008) (in the context of a guilty plea, a defendant claiming ineffective assistance of counsel must show (1) objectively unreasonable performance by counsel that (2) caused the defendant to plead guilty instead of going to trial.)

Applying the foregoing standards, the Court finds insufficient support for Petitioner's claim of ineffectiveness of counsel. Defendant's one cited instance of ineffectiveness addresses only his lawyer's reference to his having taken an FBI polygraph test regarding the veracity of his statements concerning his agreement with Mr. Richard Baidas, the majority shareholder of General RV Center, to accept $250,000 as the complete repayment of the $1,328,742.33 Simon embezzled from that client. Defense counsel indicated in his Sentencing Memorandum that "the polygraph results indicate that Mr. Simon has been 'deceptive.'" [*See* Sentence Memorandum, p. 20.][2] Defendant does not contend anywhere in his 2255 Motion that it was this reference to his polygraph results that caused him to plead guilty instead of going to trial. Indeed, there is nothing of record to indicate that the polygraph results were ever even mentioned or relied upon in connection with his pleading guilty. For these reasons, the Court rejects Defendant's ineffective assistance of counsel claim.

FAILURE OF GOVERNMENT TO MOVE FOR A 5K1.1 DOWNWARD DEPARTURE

[2] Contrary to Simon's allegation, no polygraph tests were "admitted" as evidence.

Petitioner also argues that he is entitled to 2255 relief because the Government failed to move for a 5K1.1 Downward Departure. The government has wide discretion as to whether to move for a downward departure under U.S.S.G. § 5K1.1, and a defendant generally cannot challenge the government's refusal to request such a departure, especially where there is no affirmative promise made in exchange for the defendant's plea agreement to file such a motion. *See United States v. Moore*, 225 F.3d 627, 641-42 (6th Cir. 2000). Thus, a claim that a defendant provided substantial assistance will not entitle a defendant to a remedy, discovery, or an evidentiary hearing. *United States v. Bagnoli*, 7 F.3d 90, 92 (6th Cir.1993). However, an exception exists where the government's decision was the result of a constitutionally suspect motivation, such as race or religion. *Wade v. United States*, 504 U.S. 181, 185-86 (1992); *Moore*, 225 F.3d at 641; *Bagnoli*, 7 F.3d at 92. Simon does not assert that the government's failure to file a § 5K1.1 motion was based upon an unconstitutional motive, and an independent review of the record reveals no evidence of an unconstitutional motivation. Therefore, § 2255 affords Defendant no relief in this case.

PLEA DOCUMENT ERRORS

Finally, Defendant maintains that errors are contained in the sentencing transcripts and plea documents. Petitioner claims that he is "listed as an attorney for an unknown individual violating that person's or individual's rights;" a "side bar took place and a date and year of a single count [were] wrong;" and "in two other locations, the dollar amounts stated are fictitiously written, nonrecognizable or [non]comprehensible amounts." Defendant, however, does not specify precisely where in the sentencing transcripts or plea documents these alleged errors appear nor does he give any facts from which the Court might discern exactly what the errors are.

With respect to Defendant's first complaint, the Court assumes that Defendant is referring to spelling errors/phonetic spelling contained in the transcript of Defendant's personal statement at sentencing and his reference of a "Mr. Ven tell Lee":

> [Defendant Simon addressing the Court]: I stand before you apologetic asking the Court for forgiveness. . . . I compromised m[y] morals and ethics for [my clients] to defraud the federal and state government and tax dollars. . . . I have reported the fraud and thefts and tax dollars committed by these mentioned clients to the United States DOJ, Federal Bureau of Investigation and have illustrated in documents given to the IRS in hopes of cooperation in the downward departure.
>
> I have sold myself for the financial gain. In so doing, I have admitted, accepted responsibility in cooperation if the court would show me leniency. . . . I would wish that the government and banking institutions be held to the same levels of standards that I am. There have been numerous errors made by federal governments in formulating my plea.
>
> I have been named an attorney for **Mr. Ven tell Lee** as duly noted in a side bar conference with yourself. The date of the infraction was labeled as incorrect. There's still a two comma or decimal point errors labeled in

> the plea in which I signed. If I were to make these same mistakes out in general practice, the banks and the government would find me in fraud.

[7/30/08 Sentencing Tr. (emphasis added).]

As for Defendant's complaint about comma or decimial point errors in his plea agreement, having reviewed the Agreement, the Court notes that the dollar amounts stated are presented in whole dollars, only (e.g., "defendant's embezzlement from his client Smith Brothers, Electric, Inc. of $ 129,287 [instead of $129,287.00]" and "defendant's unauthorized taking from his client General RV Center, Inc. of $1,338,742 [instead of $1,338,742.00]." It is presumably the absence of ".00" that gives rise to Defendant's claim. Defendant argued this point at sentencing:

> If I may speak, Your Honor. There were no decimal points labeled in the dollar amounts of the plea. . . . My only suggestion or thought was if I were to do that on a tax return or financial reporting to a bank it would be labeled as fraud.
>
> So I feel restitution[,] because of the fraud and [the] tax evasion that the clients were labeled [sic; liable for], . . . if the government would do a downward departure [for] cooperation, go after the tax dollars, they would receive enough to satisfy the restitution.

*Id.*

Simon's argument is that the absence of decimal point "errors" should entitle him to a reduction of sentence. Defendant, however, does not dispute the correctness of the dollar amounts in the plea agreement and, in fact, at the sentencing hearing, through counsel, Defendant acknowledged the correctness of these figures as they were reiterated in the Pre-Sentence Investigation Report, which the Court notes, has dollars *and* cents

figures. Since the figures which represented the amounts of the victims' losses were accurate, the Court finds they provide no basis for vacating or setting aside the sentence imposed upon Defendant in July 2008.

For all of the foregoing reasons, the Court will deny Defendant's Section 2255 Motion.

II.

Although not raised by Defendant Simon in his Motion, in reviewing the Court's record of this matter, the Court has discovered a clerical omission in the Judgment entered by the Court on August 8, 2009.

At Defendant's sentencing hearing, Defendant's attorney, Brian Legghio, recommended that the Court consider referring Defendant for psychiatric evaluation as part of his sentence. The Court considered Mr. Legghio's recommendation and the psychiatric report of Dr. Rasmussen, and agreed with defense counsel's recommendation that a psychiatric evaluation should be made a part of Defendant's sentence. Accordingly, the Court imposed a sentence upon Defendant, stating in relevant part, as follows:

> [I]t is the judgment of this Court that the defendant Mr. Michael J. Simon, be [] committed to the custody of the Bureau of Prisons for a term of 51 months. While he is in custody, it is recommended that the defendant participate in the Bureau of Prisons intensive drug treatment program.
>
> As indicated, **I am also recommending that the defendant undergo psychiatric evaluation to determine what, if any, additional treatment the defendant may need both during his period of incarceration and during his period of return to the community**.

* * *

> Also while in custody the defendant will participate in the Inmate Financial Responsibility Program[.] [T]he Court is aware of [the] requirements of the program and approves of the payment schedule of this program and hereby orders the defendant's compliance. . . .

[7/30/09 Sentencing Hrg. Tr. (emphasis added).]

Due to a clerical oversight, however, the recommendation that Defendant undergo psychiatric evaluation was not included in the Judgment entered on August 8, 2008.

Fed. R. Crim. P. 36 provides that the court "may at any time correct a clerical error in a judgment, order or other part of the record, or correct an error in the record arising from oversight or omission." Pursuant to Rule 36, the Court, therefore, orders that the Judgment entered on August 8, 2008 be corrected to fully and accurately reflect the sentence imposed by the Court on July 30, 2008, including the Court's recommendation to the Bureau of Prisons that Defendant Simon undergo a psychiatric evaluation to determine what, if any, additional treatment Defendant may need both during his period of incarceration and during his period of return to the community.

## CONCLUSION

For all of the foregoing reasons,

IT IS HEREBY ORDERED that Defendant's § 2255 Motion **[Dk.t # 28]** is DENIED.

IT IS FURTHER ORDERED that, pursuant to Fed. R. Crim. P. 36, the Judgment entered against Defendant on August 8, 2008 **[Dkt. # 27]** shall be corrected to include the

Court's July 30, 2008 sentencing recommendation to the Bureau of Prisons that Defendant Simon undergo a psychiatric evaluation to determine what, if any, additional treatment Defendant may need both during his period of incarceration and during his period of return to the community.

IT IS FURTHER ORDERED that Defendant's Request for Appointment of Counsel **[Dkt. # 30]** is denied as MOOT.

s/Gerald E. Rosen
Chief Judge, United States District Court

Dated: May 21, 2009

**CERTIFICATE OF SERVICE**

I hereby certify that on May 21, 2009, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following: Paul Burakoff, and I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participants:
Michael J. Simon, #41034-039, FCI Elkton, Federal Correctional Institution, P.O,. Box 10, Lisbon, OH 44432.

s/Ruth A. Brissaud
Ruth A. Brissaud, Case Manager
(313) 234-5137